**Terry LONG, Plaintiff,**

**v.**

**The NATIONAL FOOTBALL LEAGUE, Paul Tagliabue, Pittsburgh Steelers Sports, Inc., d/b/a the Pittsburgh Steelers, the City of Pittsburgh, Sophie Masloff, in her capacity as mayor of the City of Pittsburgh and the Stadium Authority of the City of Pittsburgh, Defendants.**

**Civ. A. No. 93–1885.**

United States District Court,
W.D. Pennsylvania.

Nov. 22, 1994.

---

John F. Morris and Scott A. Westcott, Pittsburgh, PA, for plaintiff.

P. Brennan Hart, Philadelphia, PA, and Gregg H. Levy, Washington, DC, for the Nat. Football League.

P. Brennan Hart, Philadelphia, PA, for Paul Tagliabue.

Alan A. Garfinkel, Pittsburgh, PA, for Pittsburgh Steelers Sports, Inc. and The Pittsburgh Steelers.

Mary K. Conturo and John G. Shorall, II, Pittsburgh, PA, for the City of Pittsburgh.

Mary K. Conturo and John G. Shorall, II, Pittsburgh, PA, for Sophie Masloff.

Scott G. Dunlop, Philadelphia, PA, for the Stadium Authority of the City of Pittsburgh.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are the motions of defendants to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This civil action arises from an incident which took place while plaintiff, Terry Long, was a member of The Pittsburgh Steelers football team. Long's urine was tested for the presence of anabolic steroids pursuant to a policy adopted by the National Football League. He was then suspended pursuant to the same policy because the test results were positive.

Plaintiff has alleged violations of the Fourth and Fourteenth Amendments of the United States Constitution, Article I, section 8 of the Pennsylvania Constitution, and various state law claims for the injury that he allegedly suffered as a result of defendants' actions. Plaintiff has asserted claims against The National Football League, Paul Tagliabue in his capacity as the Commissioner of the National Football League, the Pittsburgh Steelers organization, the City of Pittsburgh, Sophie Masloff in her capacity as the Mayor of the city of Pittsburgh, and the Stadium Authority of the City of Pittsburgh. In resolving a motion to dismiss, we must accept all factual allegations and reasonable inferences as true when viewed in the light most favorable to the non-moving party. *Sturm v. Clark*, 835 F.2d 1009, 1010 (3d Cir.1987). We may dismiss the complaint only if it appears beyond doubt that a plaintiff can prove no set of facts in support of the claims. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

Defendants contend that Long's claims for violation of the Fourth and Fourteenth Amendments should be dismissed because they fail to state a claim upon which relief can be granted. Specifically, they argue that plaintiff has failed to allege sufficient facts to support a constitutional claim against the NFL, the Steelers and Paul Tagliabue, as private actors.

 Because the language of the Fourteenth Amendment is directed at the states, a violation occurs only by conduct that may be fairly characterized as "state action". *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982).[1] Private conduct, however unfair, is not actionable under the Amendment. *National Collegiate Athletic Assoc. v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988). We must determine whether the amended complaint sufficiently alleges that

---

1. The Supreme Court has also consistently construed Fourth Amendment protection as proscribing only governmental action. *United States*

*v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

the conduct of the National Football League in testing and suspending plaintiff constitutes "state action" or is "fairly attributable to the state". *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754.

█ Stressing that the facts of each case are important, the Supreme Court has developed various tests to determine whether conduct by a private party constitutes state action. Two of the tests are relevant here. The first is the symbiotic relationship test set forth in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).[2] Under the symbiosis analysis, conduct will be considered state action if the state has "so far insinuated itself into a position of interdependence with [the acting party] that it must be recognized as a joint participant in the challenged activity ..." *Id.* at 725, 81 S.Ct. at 862. In *Burton*, a restaurant located in an off-street parking facility refused to serve the appellant because he was black. The parking building was owned and operated by the Wilmington Parking Authority, an agency of the state. The Court concluded that the conduct of the restaurant could be attributed to the state due to a combination of factors which evidenced an interdependent and mutually beneficial relationship. The Court first noted that the premises were leased from the parking authority. Also, as a condition of the lease agreement, the authority had covenanted to complete construction expeditiously, including completion of the "decorative finishing of the leased premises and utilities ... without cost to Lessee". This indicated, according to the Court, the authority's reliance on the financial viability of the restaurant. To the extent that some improvements by the lessee were attached to realty, the lessee enjoyed the same tax exemption as the authority. In addition, the authority agreed to furnish heat for the restaurant, gas service for the boiler room and made, at its' own expense, all necessary structural repairs, even those caused by the lessee's own acts or negligence. Finally, the linchpin of the Court's holding was based on the "peculiar relationship of the restaurant to the parking facility" which conferred on each an incidental variety of mutual benefits." *Id.* at 724, 81 S.Ct. at 861. The profits earned by the discriminatory behavior, "not only contribute to, but also are indispensable elements in, the financial success of [the Authority]" because the restaurant admitted that serving blacks would injure its business. *Id.*

Here, plaintiff alleges that a symbiotic relationship exists between the City of Pittsburgh and the Steelers. The allegations upon which plaintiff's conclusion is based are as follows: (1) the city directly benefits from collection of an amusement tax on the sale of tickets; (2) the city provides numerous services for the Steelers; (3) the city guaranteed the initial bond issuance for the construction of Three Rivers Stadium and (4) city council appoints the board members to the Stadium Authority of the City of Pittsburgh.

█ Defendants argue, and we agree, that the alleged facts, even if true, fail to establish a symbiotic relationship between the state and the private actors. First, the allegations of financial support and a regulatory framework are not enough to establish "state action". *See, e.g. Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In *Rendell–Baker*, the Supreme Court found no state action where a private school for maladjusted high school students discharged the employees even though public funds accounted for 90% of the school's operating budget, and the school was obliged to comply with a variety of state regulations in order to be eligible for tuition funding. The Court distinguished *Burton* and concluded that a "symbiotic relationship" did not exist because in *Burton*, the state profited financially from the discrimination, while in *Rendell–Baker*, it did not. Plaintiff's amended complaint fails to allege that either the City of Pittsburgh, the Mayor, or the Stadium Authority benefitted in any way from the conduct or NFL policy.

---

2. We note that the application of the *Burton* test has been questioned after a series of Supreme Court decisions referred to as the *Lugar* trilogy. However, in *Community Medical Center v. Emer-* *gency Med. Services*, 712 F.2d 878 (3rd Cir.1983), the Court of Appeals confirmed the validity of the test but suggested that application may have been limited.

■ We do not suggest that financial gain is a separate and distinct test. It is an important element in the mix of information to be considered in determining whether a mutually dependent relationship exists between two parties so that the behavior of one may be attributed to the other. Long's amended complaint falls short of stating a claim for constitutional violations under the symbiotic relationship test because it does not set forth sufficient facts which would allow us to fairly attribute the conduct of the NFL and the Steelers to the state. The business association alleged between the parties is simply too attenuated to attribute the conduct of which plaintiff complains to the state. Further, we disagree that the Steelers' use of the stadium establishes such a relationship. In *Burton*, the restaurant was the sole occupant of the space provided in the public parking facility. Here, the stadium hosts a variety of events, including baseball games and musical concerts.

■ The Supreme Court has also considered whether the state has exerted control or influence over the private entity in determining whether a symbiotic relationship exists. In *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the petitioners argued that the state's subsidization of nursing home costs, the payment of the medical expenses of more than 90% of the patients, and the licensing of the nursing homes made the state a virtual joint participant with the nursing homes within the meaning of *Burton*. The Supreme Court looked to the state's lack of "responsibility" over the decision of the nursing home authorities to transfer the petitioners to a lower level of care and concluded that no "state action" had occurred. Plaintiff here has also failed to allege facts which would support a cause of action based on the state's influence over the policy or decisions of the NFL or the Steelers. The facts alleged do not support such an inference. Again, even if plaintiff proves the allegations in the amended complaint, they do not meet the standard set forth in *Burton*.

■ The Supreme Court has created a second test to determine whether conduct may fairly be attributed to the state. Unlike the symbiotic relationship test which looks at the overall relationship among the parties, the close nexus test attempts to determine whether the state may be deemed responsible for the specific conduct of which the plaintiff complains. *Blum v. Yaretsky*, 457 U.S. at 1004, 102 S.Ct. at 2785. Under this test, the complaining party must show a sufficiently close nexus between the state and the challenged action to establish state action. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). A state normally is not responsible for a private decision unless it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed that of the state. *Id.* at 1004, 102 S.Ct. at 2785.

■ Plaintiff alleges that the City of Pittsburgh, Mayor Masloff and the Stadium Authority each "acquiesced and/or consented to, supported and upheld the conduct of the other defendants complained of herein." Defendants correctly assert that acquiescence or indirect involvement is not enough to show the requisite state action. *See Community Medical Center*, 712 F.2d at 881. We hold that plaintiff's allegations do not meet the standard of the nexus test. Nothing in the amended complaint suggests that either the City, the Mayor or the Stadium Authority formulated the standards or controlled the decisions of the NFL or the Steelers. A close review of the amended complaint reveals that plaintiff was suspended based on independent medical conclusions and policy objectives of the National Football League, neither of which were influenced by the state. *See e.g. Blum*, 457 U.S. at 1005, 102 S.Ct. at 2786. Plaintiff fails to allege that the state in any way influenced or implemented the substance abuse policies adopted by the NFL by which plaintiff was suspended. We will dismiss Counts I and II of plaintiff's amended complaint alleging violations of the Fourth and Fourteenth Amendments because plaintiff has failed to allege sufficient facts which would allow us to fairly attribute the conduct of the private parties to the state.

■ Next, defendants contend that plaintiff's state law claims should be dis-

missed because this court lacks independent subject matter jurisdiction. A court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. A district court may decline to exercise jurisdiction if it has dismissed all other claims over which it had original jurisdiction. 28 U.S.C. § 1367(c); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3rd Cir.1993). "In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants'." *Id.*, quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Where, as here, the federal claims have been dismissed on the pleadings, the factors delineated in *Gibbs* favor dismissal. For example, since we have dismissed the federal claims early in the proceedings, we have not invested a great deal of time in the case and, therefore, judicial economy warrants dismissing the state law claims. *See e.g. Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Further, according to the amended complaint, plaintiff and many of the defendants are in Pennsylvania, and it would not be more convenient for either party to litigate in federal court.

Plaintiff argues that principles of fairness dictate that we should retain jurisdiction because his claims may be barred in state court by the statute of limitations. However, Pennsylvania law provides a plaintiff may effect transfer of an action that has been dismissed by a federal court for lack of jurisdiction. 42 Pa.C.S.A. § 5103(b). The statute of limitations for state law claims is tolled if a timely action has been filed in a federal court and dismissed. *See, Weaver v. Marine Bank*, 683 F.2d 744 (3rd Cir.1982). Because we will dismiss plaintiff's federal claims at an early stage in the litigation, the parties are not inconvenienced by litigating in state court and fairness weighs in favor of transferring jurisdiction to state court. Plaintiff's state law claims will be dismissed without prejudice. An appropriate order will follow.

## ORDER

AND NOW, this 22nd day of November, 1994, after consideration of the submissions of the parties,

IT IS ORDERED that the motions of defendants, the National Football League, Paul Tagliabue, Pittsburgh Steelers Sports, Inc., the City of Pittsburgh, Sophie Masloff and the Stadium Authority of the City of Pittsburgh, to dismiss Counts I and II of the Amended Complaint (document numbers 13, 15 and 16), be and hereby are granted.

IT IS FURTHER ORDERED that Counts III, IV, V, VI, VII, VIII and IX of plaintiff's amended complaint be and hereby are dismissed without prejudice.