Paul G. BREINER, Marsha L. Breiner, Angela Serfass, West Penn Township, Andreas No. 1, Andreas Volunteer Firefighter's Relief Association, Byron Hess, Plaintiffs

v.

Suzanne LITWHILER, James Tierney, Brian Johnson, Larry Breiner, Alan Parker, Ernest Boerner, Samuel A. Soley, Scott, Soley, West Penn Fire Company # 1, West Penn Township, Defendants

No. 3:CV–00–0594.

United States District Court, M.D. Pennsylvania.

Feb. 21, 2003.

Don Bailey, Harrisburg, PA, for Plaintiffs.

Rolf E. Kroll, Margolis Edelstein, Harrisburg, PA, Shaun J. Mumford, Margolis Edelstein, Camp Hill, PA, for Defendants.

### MEMORANDUM

VANASKIE, Chief Judge.

This civil rights litigation with pendent state law claims is one manifestation of the intensity and tenacity of a volunteer firefighter feud in West Penn Township, Schuylkill County, Pennsylvania. The imbroglio climaxed in late 1999 with the establishment of a new volunteer fire compa-

ny, West Penn Fire Company No. 1 ("West Penn No. 1"), and the recognition of West Penn No. 1 by West Penn Township as the provider of firefighting services in that locale. In January of 2000, leaders of West Penn No. 1 orchestrated the removal of firefighting equipment, including a rescue truck, from the long standing incumbent volunteer firefighting company in West Penn Township, Andreas No. 1 Volunteer Fire Company ("Andreas No. 1").

The incumbent firefighting unit, joined by its associated relief association, the Andreas Volunteer Firefighter's Relief Association (the "Andreas Relief Association"), its Chief, Paul G. Breiner, his daughter, Marsha Breiner, and two other persons associated with Andreas No. 1—Fire Police Captain Angela Serfass and volunteer firefighter Byron Hess—have commenced this suit against the upstart company; its Chief, Leroy Breiner (no relation to Plaintiffs Paul and Marsha Breiner); other individuals associated with West Penn No. 1; West Penn Township (the "Township"); the Township Chief of Police, James Tierney; a former Township police officer, Brian Johnson; and the Township Secretary, Suzanne Litwhiler. Plaintiffs claim, *inter alia*, that the removal of the firefighting equipment from the Andreas No. 1 Fire Hall on January 11, 2000, purportedly assisted by the Township police department, as well as the Township's recognition of West Penn No. 1 for firefighting services and the refusal to allocate state funds to Andreas No. 1, violate constitutional rights guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution. Angela Serfass has filed a separate claim, asserting that the refusal to allow her to assume the position of Fire Police Captain before she reached the age of 21 was done in retaliation for her association with Paul Breiner and Andreas No. 1. Paul Breiner and Byron Hess

have asserted a claim that disciplinary action was taken against them in retaliation for the filing of this lawsuit. Plaintiffs have also asserted state law claims for defamation, malicious prosecution, and civil conspiracy.

Pending in this protracted litigation are motions challenging Plaintiffs' Second Amended Complaint, which was filed following the completion of discovery and without leave of Court. (Dkt. Entries 53 and 55.) Also pending are summary judgment motions contesting the viability of the claims presented under 42 U.S.C. § 1983 and urging that exercise of supplemental jurisdiction over the state law claims be declined in the event that the federal law causes of action are dismissed. (Dkt. Entries 45, 49 and 55.)

Having carefully considered the entire record and the parties' submissions, I have found that Plaintiffs failed to present sufficient evidence to show the requisite involvement by the Township police officers in the removal of the firefighting equipment on January 11, 2000 to support a § 1983 claim, and that, in any event, Plaintiffs' Fourth and Fourteenth Amendment claims concerning the removal of the property are barred under claim and issue preclusion principles arising from Plaintiffs' litigation to final judgment of a related replevin action in state court. As to Plaintiffs' claims concerning the Township's decision to recognize West Penn No. 1 and to not allocate state-provided funds to Andreas No. 1, I similarly have found that Plaintiffs are collaterally estopped from pursuing the alleged constitutional violations by virtue of their pursuit to final judgment of a related declaratory judgment action in state court. Finally, I have found that the First Amendment retaliation claims are either barred by related state court litigation or not factually supported. Because the exercise of supple-

mental jurisdiction over the remaining state law claims is not warranted, they will be dismissed, without prejudice, and this chapter of the fight among West Penn Township's volunteer firefighters will be brought to a conclusion in this Court.[1]

## I. BACKGROUND

Prior to 1999, Andreas No. 1 had been the primary firefighting company for the Township for many years. (Stmt. Of Material Facts in Support of Litwhiler, et al. S.J. Mot. (Dkt. Entry 47) at ¶ 2.)[2] In 1999, a number of disgruntled members of Andreas No. 1 left the organization and formed West Penn No. 1. (*Id.*, ¶ 3.) In November of 1999, the Township Board of Supervisors passed Resolution # 7, which deactivated Andreas No. 1 and recognized West Penn No. 1 as the exclusive provider of fire protection services in the Township.[3] (West Penn Township Stmt. of Material Facts (Dkt. Entry 57) at ¶ 3.)

Pursuant to the bylaws of the Andreas Relief Association, its quarterly membership meeting was to be conducted on January 11, 2000. Paul Breiner, the Relief Association's Vice President, purported to postpone the meeting. A number of Andreas Relief Association members, however, convened in the parking lot of the Andreas No. 1 Fire Hall on the evening of January 11th. Those assembled were essentially the members of the newly formed West Penn No. 1. They were unable to gain access to the Hall at that time because Paul Breiner had changed the locks

on the building. Thus, they proceeded to conduct the Relief Association meeting in the parking lot.[4]

Prior to calling the meeting to order, Leroy Breiner, the President of the Andreas Relief Association and the Chief of West Penn No. 1, summoned West Penn Township Police Officer Brian Johnson and informed Johnson of his intention to have the Relief Association transfer firefighting equipment to West Penn No. 1. (Johnson Dep. at 17–19, 117–30.) According to Officer Johnson, while Leroy Breiner expressed concern that there could be trouble, Officer Johnson did not regard the matter as serious and left the Fire Hall parking lot. (Johnson Dep. at 144–45.)

Plaintiffs dispute Officer Johnson's assertion that he did not remain at the scene. It is, however, undisputed that the Andreas Relief Association voted to transfer possession of a 1976 GMC rescue truck and related equipment to West Penn No. 1. It is also undisputed that members of West Penn No. 1 somehow gained access to the Andreas No. 1 Fire Hall that evening and removed the rescue truck and related equipment.

With that act, the litigation floodgates opened. On January 18, 2000, Andreas No. 1 and several residents of Schuylkill County filed an equity action in the Schuylkill County Court of Common Pleas, docketed to No. S–120–2000. Andreas No. 1 and the Township residents sought deactivation of West Penn No. 1 on the basis

1. Plaintiffs have already started a new chapter. On November 18, 2002, Andreas No. 1, the Andreas Relief Association, and Paul Breiner filed a § 1983 action, asserting unconstitutional retaliatory conduct on the part of the Township and its solicitor, as well as a defamation claim on behalf of Mr. Breiner. (M.D.Pa. No. 3:CV–02–2080.)

2. Citation to movants' statements of material facts signifies that the assertion has been admitted by Plaintiffs.

3. Resolution 7 is Ex. 4 at Dkt. Entry 48.

4. The information related in this paragraph was gleaned from a ruling of the Schuylkill County Court, a copy of which is included as Ex. N to the Statement of Material Facts of West Penn No. 1, et al.

that Andreas No. 1 was better equipped to handle fires in the community. Andreas No. 1 also alleged that the Township had improperly transferred funds earmarked for Andreas to West Penn No. 1. Andreas sought a preliminary injunction demanding that the Township re-activate Andreas and immediately adopt another resolution recognizing and authorizing Andreas to fight fires within the municipality. (Ex. "D" to Stmt. of Material Facts of West Penn No. 1 Defendants.)

On January 21, 2000, the Hon. John E. Domalakes of the Court of Common Pleas of Schuylkill County held a conference to address some issues raised in the equity action. At the conference, the Schuylkill County Court "stressed the importance of maintaining viable emergency services to the Township residents and strongly urged the contending parties to attempt to work together in the interest of the Township residents." (J. Domalakes' Op. of April 28, 2000 at 2.) As a result of the conference, a stipulation was placed on the record wherein the parties agreed that Resolution # 7 of 1999 would be modified to include both Andreas No. 1 and West Penn No. 1 as fire protection providers. ("Stipulation," Dkt. Entry 48, Ex. 6, p. 3.) The Township, however, reserved its right to make rules and regulations by ordinance for the government of fire companies within the Township and to appoint the Township Fire Chief. (Id., p. 4.) Significantly, the stipulation also provided that all equipment and firefighting apparatus currently in the possession of each fire company, including the 1976 GMC rescue truck, were to remain with each respective company until further order of court. (Id., p. 3) The companies were expressly permitted to utilize this equipment for firefighting and other emergency purposes. (Id.) The stipulation was adopted as an order of court.

In accordance with rights reserved in the stipulation, on February 15, 2000, the Township Supervisors passed Ordinance # 4 of 2000. (Dkt. Entry 57, ¶ 5.) "The Ordinance establishe[d], among other things, rules and regulations for the government of fire companies located within the Township boundaries and their officers pursuant to Section 1803(b) of the Second Class Township Code, 53 P.S. § 66803(b)." (J. Domalakes' Op. of April 28, 2000 at 3.) The ordinance further provided that West Penn No. 1 would be the primary provider of emergency services within the Township, while Andreas would be responsible for responding to structure fires. (Id. at 1–2.) The ordinance prohibited all volunteer firefighters from responding to structure fires in their personal vehicles and also provided that if any responder violated the provisions of the ordinance, the responder would immediately be suspended and a hearing would be held to determine what, if any, disciplinary action should be taken. (Id. at 2.)

On March 2, 2000, Andreas No. 1 and its co-plaintiffs converted the equity action to one seeking declaratory relief by filing an Amended Complaint for Declaratory Judgment. (Hereinafter referred to as the "Declaratory Judgment Action.") The Amended Complaint challenged Ordinance # 4, asserting that it created a dangerous situation for residents of the Township by limiting the types of fires to which Andreas could respond. (See Dkt. Entry 48, Ex. 8.) In addition, Andreas challenged the Township's authority to transfer funds claimed to be earmarked for Andreas. Andreas No. 1 also sought declaratory relief with respect to the removal of the 1976 GMC rescue truck. Alleging that the vehicle was titled in the name of Andreas No. 1 and that, at a meeting held on January 31, 2000, the Andreas Relief Association had passed a motion calling for the return of the truck and related equipment, Plain-

tiffs requested that the state court declare "that the title and legal right in the rescue truck is properly vested in the Andreas Fire Company," and that the other firefighting equipment in question "is the property of the Andreas Fire Company." (Amended Complaint in No. S–120–2000, ad damnum clause.)

On April 28, 2000, Judge Domalakes issued an opinion holding that Ordinance # 4 of 2000 constituted a "valid exercise of the Township's authority as provided in the Second Class Township Code, case law, and Andreas' own agreement, which resulted in this court's January 21, 2000 Order." (J. Domalakes' Op. of April 28, 2000 at 9.) As to the removal of the rescue truck and equipment, Judge Domalakes concluded that an evidentiary hearing would be required in order to determine "who owned such property initially and how the items came to be transported to West Penn." (Id. at 5.) Judge Domalakes' Order provided that "[e]ither party may certify the matter for trial on the disputed factual issues." (Id. at 11.)

Andreas did not certify the matter for trial. Instead, on May 30, 2000, Andreas moved for reconsideration. On June 28, 2000, Judge Domalakes, while re-affirming his earlier determination that Ordinance # 4 of 2000 was a valid enactment, determined that the motion for reconsideration was untimely. Andreas No. 1 did not appeal Judge Domalakes' decision.

■ On September 28, 2000, Andreas No. 1 and the Relief Association filed a Replevin Action against West Penn No. 1, seeking return of the 1976 GMC rescue truck and firefighting equipment. (Ex. K

to West Penn No. 1 S.J. Mot.) The complaint repeated averments that West Penn No. 1 "improperly and illegally" removed the rescue truck, which was titled in the name of Andreas No. 1, and "improperly took possession" of certain equipment and clothing owned by the Andreas Relief Association. (Id., pp. 2–3.) Furthermore, the Andreas Relief Association itself claimed an interest in the rescue truck and averred that on January 31, 2000 it had taken action to effectuate the return of the firefighting vehicle and related equipment. Andreas No. 1 and the Andreas Relief Association sought return of the property, but did not request damages.[5]

On January 29, 2001, Judge Domalakes conducted a non-jury trial in the Replevin Action, at which time the parties stipulated that West Penn No. 1 had returned the 1976 GMC rescue truck to Andreas on January 20, 2001. (Id.) On March 28, 2001, Judge Domalakes issued his opinion in the Replevin Action. (Ex. N to West Penn No. 1 S.J. Mot.)

Judge Domalakes ruled that the Andreas Relief Association properly conducted a meeting on January 11, 2000 and validly authorized transfer of possession of the firefighting equipment to West Penn No. 1. He rejected, however, the contention that the Andreas Relief Association transferred ownership of the property to West Penn No. 1. Consistent with these findings, Judge Domalakes ruled that West Penn No. 1 had been entitled to use the firefighting equipment "during the period of time that it was authorized by [the Andreas Relief Association] to do so." (Id. at 10.)[6] Because the Andreas Relief Associ-

---

**5.** An action for replevin also allows for the recovery of damages for the alleged wrongful possession. See Pa.R.Civ.P. 1085(b); Hembach v. Quikpak Corp., No. Civ. A. 97–3900, 1998 WL 54737, *6 n. 10 (E.D.Pa. Jan. 8, 1998).

**6.** As noted above, on January 21, 2000, the parties had stipulated that West Penn No. 1 could retain the property in question for firefighting purposes pending further order of court.

ation now sought return of the property, Judge Domalakes directed its return to the Andreas Relief Association. Judge Domalakes, however, denied Andreas No. 1's claim to the property.

Andreas No. 1 appealed this aspect of the trial court ruling to the Pennsylvania Commonwealth Court. By unpublished opinion dated October 18, 2001, the Commonwealth Court found that the issue presented to it was different than the main question before the trial court. While the trial court was concerned with whether West Penn No. 1's original possession of the firefighting apparatus was lawful, the question before the Commonwealth Court was whether the property was owned by the Andreas Relief Association or Andreas No. 1. Without disturbing the trial court's finding that possession of the property had been validly transferred to West Penn No. 1, the Commonwealth Court vacated "that portion of the trial court's order that found that the [Andreas Relief] Association had the right to all the apparatus," (Oct. 19, 2001 Op. at 7), and remanded the matter with instructions that the trial court determine who was the owner of the various items.[7]

This civil rights action with pendent state law claims was commenced on March 31, 2000, while the Declaratory Judgment Action was still pending. The original Complaint asserted five causes of action brought by a combination of Plaintiffs against a combination of Defendants. In Count I, Paul Breiner, Andreas No. 1, and the Andreas Relief Association stated a claim against all Defendants pursuant to 42 U.S.C. § 1983 for violations of their rights and interest in property under the Fourteenth Amendment; their freedom

from unlawful searches and seizures under the Fourth Amendment; and their freedom of association under the First Amendment. In Count II, Angela Serfass stated a claim against West Penn Township and Tierney for violation of her First Amendment rights in connection with the decision not to allow her to serve as Fire Police Captain. In Count III, Paul Breiner stated a common law claim against Alan Parker, Sam Soley, Scott Soley, Leroy Breiner, and Suzanne Litwhiler for defamation. In Count IV, Marsha Breiner stated a common law claim against Ernest Boerner for malicious prosecution. In Count V, all Plaintiffs asserted a common law claim against all Defendants for civil conspiracy.

On May 24, 2000, before any responsive pleading had been served, Plaintiffs filed an Amended Complaint (Dkt. Entry 9), which added Byron Hess as a Plaintiff and correctly identified one of the Defendants as "Leroy" Breiner. The Amended Complaint also added Count VI, which is a claim by Paul Breiner and Byron Hess against Leroy Breiner, the Township, and West Penn No. 1 for retaliation for actions allegedly taken after the filing of the original Complaint.

By Order issued July 20, 2000, the deadline for completion of discovery was fixed at February 28, 2001. Amendments of pleadings were to be made by August 31, 2000. Following several enlargements of time, the discovery deadline was extended until August 15, 2001.

Following a telephonic status conference on August 9, 2001, the Court issued an Order granting Plaintiffs until August 31, 2001 to move for leave to file a second amended complaint, and directing that any response to such a motion be filed by

7. During oral argument conducted on Feb. 18, 2003, counsel informed the Court that the Andreas Relief Association and Andreas No. 1 amicably resolved the ownership question

when the case was remanded to Judge Domalakes. Litigation in the Replevin Action is thus concluded.

September 30, 2001. On August 31, 2001, Plaintiffs, instead of moving for leave to amend, simply filed their "Second Amended Complaint."

The Second Amended Complaint purports to add as a Defendant Paul Datte, the solicitor for West Penn Township. It is alleged that Datte "conspired" with Defendants to remove the rescue truck and to represent West Penn Township in disciplinary proceedings brought against Paul Breiner and Byron Hess. The Second Amended Complaint also added a claim that the refusal to allow Ms. Serfass to take the position of Fire Police Captain denied her equal protection of the laws, in addition to abridging her rights of association. Finally, the Second Amended Complaint added "Count VII," in which it was asserted that the "unlawful events as alleged above, including the defamation of Breiner, the diversion of public monies, the damaging of plaintiffs [sic] equipment, and the superfluous and harassing pseudo disciplinary proceedings were all conducted by defendants in order to deprive plaintiffs of their opportunities and rights to associate and perform public service functions." (Second Am. Compl., ¶ 74.)

The propriety of the filing of the Second Amended Complaint has been challenged by West Penn No. 1 and a number of individual Defendants. (*See* Dkt. Entry 53, Mot. to Dismiss Amended Compl., or in the Alternative, the Second Amended Compl.) The same grouping of Defendants, hereinafter sometimes referred to as the West Penn No. 1 Defendants, have separately moved for summary judgment

on Plaintiffs' § 1983 claims. (Dkt. Entry 49.) Also moving for summary judgment on Plaintiffs' § 1983 claims are West Penn Township (Dkt. Entry 55), and the individual Defendants who were employees of West Penn Township, Suzanne Litwhiler (the Township Secretary), Chief of Police James Tierney, and former police officer Brian Johnson (collectively referred to as the "Township Employees"). (Dkt. Entry 45.)

The motions have been fully briefed. Oral argument was conducted on February 18, 2003. The motions are ripe for decisions.

## II. DISCUSSION

### A. Viability of Plaintiffs' Second Amended Complaint

■ All three groups of Defendants have challenged Plaintiffs' Second Amended Complaint on procedural grounds.[8] Rule 15(a) of the Federal Rules of Civil Procedure authorizes a party to amend a pleading without leave of court under limited circumstances and *only once*. "Otherwise a party may amend the party's pleading *only* by leave of court or by written consent of the adverse party." Fed. R.Civ.P. 15(a) (emphasis added). Plaintiffs, as was their right, filed an amended complaint without leave of court on May 24, 2000. (Dkt. Entry 9.) Plaintiffs, therefore, could not simply file a Second Amended Complaint, as they did on August 31, 2001. This Court's Order of August 9, 2001 merely authorized the filing of a motion requesting leave to file a second amended complaint.[9] Authorization to

---

**8.** While only the West Penn No. 1 Defendants filed a motion challenging the Second Amended Complaint, the remaining Defendants have contested the viability of the Second Amended Complaint in their briefs in support of their summary judgment motions.

**9.** Plaintiffs, in the "Background" section of their consolidated brief in opposition, incorrectly assert that "[o]n August 9, 2001, this Court issued a bench order granting plaintiff leave to file a second amended complaint and establishing some time limits to respond." (Dkt. Entry 64, p. 2.) Then, in the "Issues"

seek leave to amend the pleading was necessary because the deadline for doing so had expired a year earlier. The August 9th Order was clear and unambiguous: Plaintiffs could move for leave to file a second amended complaint. Such a motion would present the proper context for deciding whether discretion should be exercised to allow the addition of a new defendant and a new claim 18 months after suit was brought. Because Plaintiffs never sought leave to amend their pleadings, as required by Fed.R.Civ.P. 15(a) and this Court's August 9, 2001 Order, their Second Amended Complaint must be stricken.

■ Even if it were assumed that Plaintiffs were seeking leave to amend, the interests of justice would be furthered by denying permission to do so. Rule 15(a) provides a liberal standard—leave of court to amend shall be "freely given when justice so requires." *Scattergood v. Perelman*, 945 F.2d 618, 626–627 (3rd Cir.1991). Nevertheless, a court may deny leave to amend on the basis of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies by amendments previously allowed, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Allowance to amend is not intended to be automatic. *Dover Steel Co., Inc. v. Hartford Acc. & Indem. Co.*, 151 F.R.D. 570, 574 (E.D.Pa.1993).

■ In this case, Plaintiffs have not provided a satisfactory explanation for their delay in seeking to add Attorney Datte as a Defendant or in asserting a variant of the retaliation claim originally presented in Count VI of their Amended Complaint. Attorney Datte was prominently featured in the Amended Complaint filed in May of 2000. Plaintiffs have proffered no explanation as to why he could not have been deposed before May of 2001. Nor have they offered an adequate explanation as to why they waited more than three months after his deposition to seek his joinder.[10]

As to the § 1983 "retaliation" claim purportedly asserted in Count VII, Plaintiffs offer no excuse whatsoever for its untimely assertion. Nor do they articulate any basis for the claim in Count VII that the alleged commission of perjury in connection with this lawsuit supports a § 1983 cause of action for retaliation.

section of their brief, Plaintiffs again state that they "were granted leave to file a second amended complaint by the Court." (*Id.*, p. 18.) Yet again, in the final sentence of their brief, Plaintiffs state that "[t]his is a major reason why the request to amend so late occurred when it did." (*Id.*, p. 19.) Contrary to Plaintiffs' assertions, the Court's August 9, 2001 Order stated:

(1) Plaintiffs shall have until August 31, 2001 to file a *motion for leave to amend the complaint* with supporting brief.

(2) Defendants shall have until September 30, 2001 to file a response to plaintiffs' motion for leave to amend.

(Dkt. Entry 42, p. 1; emphasis added.)

10. Plaintiffs suggest that they were unable to confirm Datte's involvement until Brian Johnson was re-deposed on August 8, 2001, and questioned about an excerpt from a transcribed communication between Officer Johnson and a dispatcher. The excerpt indicates that Johnson told the dispatcher that the fire truck had been removed by West Penn No. 1 "on advice of their attorney." Significantly, Johnson did not purport to identify this lawyer. (*See* Johnson Dep. of 8/8/01 at 190–92.) Furthermore, it is evident that Plaintiffs were in possession of the recorded communications between Johnson and the dispatcher and had prepared a transcript of the tapes as of the time of Johnson's first deposition on May 10, 2001. Indeed, Johnson was questioned about this excerpt at his first deposition. (Johnson Dep. at 43–47.) Thus, Plaintiffs' assertion that they were unable to ascertain Datte's purported involvement until the uninformative exchange that occurred at Johnson's second deposition is disingenuous.

In light of the unexcused delay in presenting a second amended complaint coupled with the conclusory and broad assertions it presented, I find that Defendants would be substantially prejudiced if leave to amend were granted. The parties have filed comprehensive summary judgment motions. Resolution of those motions would not necessarily dispose of the claims against Mr. Datte. Discovery would be required on the new Count VII. Under these circumstances, Plaintiffs should not be able to impose on the Defendants the substantial burden of re-opening the discovery record. Thus, even if Plaintiffs had sought leave to amend, the filing of a second amended complaint would not have been allowed. Accordingly, the Second Amended Complaint will be stricken.

**B. Count I: Paul Breiner, Andreas No. 1, and the Andreas Relief Association against all Defendants for violations of 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments**

In Count I, Paul Breiner, Andreas No. 1, and the Andreas Relief Association bring a cause of action against all Defendants pursuant to 42 U.S.C. § 1983. In the Amended Complaint, Plaintiffs demand judgment "for the deprivation of their right to substantive due process to be free of irrational baseless government acts under the 14th Amendment, to be free of unlawful seizures, under the 4th Amendment and not to be deprived of property without due process of law, and under the 1st Amendment not to be deprived of their right to associate as a volunteer fire com-

pany, and to be free of conspiracies to deprive them of the aforementioned rights . . . ." (Dkt. Entry 9, p. 13.) In essence, Plaintiffs' claims involve two separate, but related matters: 1) the removal of the firefighting equipment, in particular, the 1976 GMC rescue truck, on January 11, 2000; and 2) the Township's choice of West Penn No. 1 as the primary service provider accompanied by the Township's purported "diversion" of funds from Andreas No. 1 to West Penn No. 1.

To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must be able to show (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993).[11] At issue on the summary judgment motions is whether Plaintiffs have presented sufficient evidence to warrant a jury trial on either of the essential elements.

**1. *The Removal of the Fire Truck and Other Property***

On January 11, 2000, at a regularly scheduled quarterly meeting of the Andreas Relief Association, the members of the Relief Association voted to transfer the 1976 GMC rescue truck and other firefighting equipment and clothing to West Penn No. 1 for its use in providing fire protection service. As a result of the vote, the Relief Association members entered the Andreas No. 1 Fire Hall and removed the truck, along with the equipment

---

11. Section 1983 of title 42 U.S.C., in pertinent part, reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

mounted on the vehicle. Plaintiffs contend that the removal of the equipment violated the Fourth Amendment's protection against unreasonable seizures, along with the Fourteenth Amendment's protection against the deprivation of property without due process.

### a. *Absence of "State Action"*

■ In a § 1983 case such as this, "[s]tate action is a threshold issue ·...." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998), *cert. denied*, 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 794 (1999). With regard to the incident in question, the only state actors allegedly involved in the removal of the equipment are Police Chief Tierney and Officer Johnson. Officer Johnson admits that he was at the Fire Station shortly before the disappearance of the truck. He denies being present, however, when the truck was removed. Furthermore, Plaintiffs have not adduced any direct evidence that Johnson was present when the property was taken.

Chief Tierney acknowledges that he was present at the Fire Station at about 6:00 p.m. on the night in question, about 1½ to 2 hours *before* the truck was taken. As with Johnson, Plaintiffs have adduced no direct evidence that Tierney was present when the truck and equipment were taken. Absent active participation of law enforcement authorities, there is no state action involved in the removal of the property, and thus no viable § 1983 claim. *See Abbott*, 164 F.3d at 147.

Plaintiffs attempt to cover the gap in their evidence with an assertion that there is circumstantial proof of the police officers' involvement in the taking of the property. At oral argument, Plaintiffs' counsel identified the crucial circumstantial evidence as the recorded communications between Johnson and a dispatcher on the night in question. The transmissions, however, indicate that Johnson was responding to a hit and run call when a burglar alarm at the Fire Hall sounded. (*See* Exhibit # 1 to Johnson Dep. of May 10, 2001.) Specifically, information maintained by the dispatcher shows Johnson to have been at the Fire Hall at 19:14 hours, or 7:14 p.m. (*Id.* at 16.) The hit and run call came in at 20:10 hours (8:10 p.m.), and Johnson was en route to that call at 20:11 hours. The automatic burglar alarm did not come in until 20:16 hours. (*Id.* at 17.) Johnson responded to that call and arrived back at the Fire Hall at 20:22 hours. (*Id.* at 13.) Johnson cleared the alarm call at 20:28 hours. (*Id.*)

Paul Breiner arrived at the Fire Hall shortly thereafter. He seized upon the dispatcher's statement that the police were on scene at the fire company when the burglar alarm came in to make the accusation that police were present when the equipment was stolen. Plaintiffs also rely upon the following exchange between Johnson and the dispatcher after the dispatcher informed Johnson that Paul Breiner was accusing Johnson of being present when the truck was taken:

> Johnson: Everybody is in trouble.
>
> Dispatcher: Oh, yeah.
>
> Johnson: Oh, yeah, everybody is in trouble. We're all in on it.

(*Id.* at 15.)

At his deposition, Johnson explained that his statement that "We're all in on it" was simply his sarcastic repetition of Paul Breiner's accusation to him. (Johnson Dep. at 160, 204–05.) This isolated statement is indeed slender circumstantial evidential that both Johnson and Tierney were present when the fire truck and related items were taken.

Assuming that this circumstantial evidence is sufficient to support an inference that one or both of the officers were pres-

ent when the fire truck and other items were taken, it does not suffice to create a triable question as to whether there was "state action." Officer Johnson testified that he was advised by Leroy Breiner of the intention to conduct the meeting of the Andreas Relief Association and to authorize the transfer of possession of the property in question to West Penn No. 1. (Johnson Dep. at 142–44.) Officer Johnson further testified that he was not in a position to know whether the transfer of the property was "civilly or criminally proper .…" (*Id.* at 142.) Under these circumstances, even if Johnson were present at the time the property was taken, state action would be absent.

■ In the context of private repossession of property, mere presence of a police officer "does not, alone, constitute state action causing a deprivation of a protected property interest." *Abbott,* 164 F.3d at 147. Only if the police presence lends "a cachet of legality and had the effect of intimidating [the plaintiff] into not exercising his right to resist, thus facilitating the repossession," could the requisite exercise of state authority be found. *Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir.1985). Police officers who merely check documentation and do not appear to take sides do not lend the aura of state authority to the actions of otherwise private actors. *Abbott,* 164 F.3d at 147.

These principles were applied in *Vakkas v. Tyson Associates,* No. Civ. A. 98–4981, 2000 WL 325916 (E.D.Pa. March 28, 2000). In *Vakkas,* a landlord exercised self-help repossession of commercial leased property and inventory located on the property as a result of the tenants' alleged failure to pay rent. The police were notified in advance of the landlord's intention to enter the premises and remove an inventory consisting of furs valued at between $200,000 to $500,000. Shortly after entrance to the property had been gained, an officer arrived on the scene in response to a radio call of a burglary in process. When the officer arrived, he was informed of the purpose of the break-in and simply stood by. Significantly, the tenants were not present at the time that the property was removed. After successfully securing return of the property in question, the tenants brought a § 1983 action in federal court, claiming that the removal of the property violated their Fourth and Fourteenth Amendment rights. After surveying the pertinent case law from a number of jurisdictions, Judge Kelly concluded:

> Significantly, all of the case law in which a colorable violation of an individual's rights under § 1983 during a private repossession with police present has been found have involved scenarios where the complainant was present and cognizant of the police presence. Moreover, those courts which have found state action when police officers are involved in a private repossession have emphasized that the actions of the police officers were such that they could have engendered fear and intimidation on the part of the plaintiffs. However, in the instant case, critically, no Plaintiff nor representative of any Plaintiff was even present during the incidents giving rise to this lawsuit. Accordingly, a highly significant, if not crucial, factor in finding state action under § 1983 is absent from this case.

> Furthermore, in imposing liability under § 1983, … courts require evidence of substantially more active participation on the part of police officers in private repossessions than that which is attributable to the [Defendant officers].… The defendants did not invite any of the police officers to attend, observe, or assist in the repossession.… [Defendant

officers] did not assist in breaking the locks on the property . . . .

.     .     .     .     .

Based on the above, we find that the actions of [the Defendant officers] did not even come close to amounting to the "sanctioning, permitting and facilitating (a) the ransacking of Plaintiffs' store . . .; and (2) the misappropriation of valuable furs and inventory belonging to plaintiffs . . .," as characterized by Plaintiffs. Rather, the actions of the defendant police officers constituted little more than mere presence at the scene as in *Abbott* . . . . As such, no state action for purposes of Section 1983 existed . . . .

*Id.* at *8.

One of the cases on which Judge Kelly relied was *Sherry v. Associates Commercial Corp.*, 60 F.Supp.2d 470 (W.D.Pa. 1998), *aff'd mem.*, 191 F.3d 445 (3d Cir. 1995). In *Sherry*, then District and now Circuit Judge D. Brooks Smith found that police presence at the repossession of motor vehicles did not provide the requisite "state action" to animate a § 1983 claim. In that case, the plaintiff was present and was told by the police that the private party had a right to take possession of the vehicles. Even though the officer was incorrect, Judge Smith explained that "[a] state actor's mistake of law or erroneous determination of legal responsibility should not be a sufficient basis for shifting the state actor's 'mantle of authority' to the private actor who sought his assistance. Something more is required." *Id.* at 475–76.

In *Barrett v. Harwood*, 189 F.3d 297 (2d Cir.1999), the court phrased the "crucial question" as "whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the

debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." *Id.* at 302–03. An officer present at a scene as a peace officer, and not to provide material assistance in the seizure of property, does not lend state authority to the action of the private party.

In this case, there is evidence that at least Officer Johnson was aware of the intention of Leroy Breiner and other Defendants to take property from the Andreas No. 1 Fire Hall for delivery to West Penn No. 1. There is also evidence that Leroy Breiner claimed to have the requisite authority to do so by acting through the Andreas Relief Association. Thus, the repossession cases, in which a private actor takes property, are applicable here. Plaintiffs must therefore prove more than the mere presence of a police officer to convert the private action of Leroy Breiner, et al. to state action. Assuming that Officer Johnson was present when the property was taken, there is no evidence that he provided the type of assistance necessary to lend state authority to the conduct of the private actors. No representative of the Plaintiffs was present at the time the property was taken, so it could not be said that the police officers engendered fear or a reluctance to resist the removal of the property. During oral argument, Plaintiffs' counsel characterized Officer Johnson's alleged presence as providing "cover" for the private actors' conduct, *i.e.*, Officer Johnson was merely "standing by" to "preserve the peace." There is no evidence that he or Chief Tierney entered the Fire Hall premises or took any specific action. Under these circumstances, Plaintiffs have failed to adduce sufficient evidence on the question of state action and the Defendants are entitled to summary judgment with respect to Plaintiffs' Fourth and Fourteenth Amend-

ment claims arising from the removal of the rescue truck and other items.[12]

### b. *The Preclusive Effect of the Replevin Action*

■ Even if state action were present, the doctrine of res judicata, also know as "claim preclusion," would bar Plaintiffs' Fourth and Fourteenth Amendment claims pertaining to the removal of the property in question. Specifically, the litigation of the Replevin Action to final judgment bars Plaintiffs' claims pertaining to the removal of the firefighting apparatus.

■ As our Court of Appeals has explained, " '[w]hen a litigant expects that a court is willing to consider its legal claims, raises some of those claims, and has those claims adjudicated, it makes sense to apply normal principles of claim preclusion to hold that the litigant has waived any legal claims he or she fails to raise which have arisen from the same transaction.' " *Gulla v. North Strabane Tp.*, 146 F.3d 168, 173 (3d Cir.1998). The doctrine of claim preclusion is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes." *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir.1990). Its purpose is to avoid the cost and annoyance of multiple litigation, conserve scarce judicial resources, and promote reliance on judicial decisions by minimizing the possibility of conflicting rulings. *Id.* Claim preclusion requires three factors: (1) a final judgment on the merits in a prior suit; (2) identity of the parties or their privies; and (3) a subsequent suit based on the same cause of action. *Lubrizol Corp. v. Exxon*

*Corp.*, 929 F.2d 960, 963 (3d Cir.1991), *cert. denied*, 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992).

In this case, there is no dispute that the Replevin Action has been litigated to a final judgment. It is also clear that the present case involves parties identical to those in the Replevin Action (Andreas No. 1, the Andreas Relief Association, and West Penn No. 1) or those in privity with those parties. In this regard, the individuals purportedly responsible for the removal of the property in question are named as Defendants based upon their relationship to or association with West Penn No. 1. *See Williams v. Lehigh County Dept. of Corrections*, 19 F.Supp.2d 409, 412 (E.D.Pa.1998). Finally, this suit is based on the same cause of action presented in the Replevin Action in that both cases involve complaints pertaining to the same conduct, the same material facts, and the same witnesses and documentation. *See Richard Johnson Honeyshine Shoe Exp. Services v. U.S. Equity Realty, Inc.*, 125 F.Supp.2d 695, 698 (E.D.Pa.2000), *aff'd mem.*, 275 F.3d 35 (3d Cir.2001).

Central to both the Replevin Action and this case was the issue of whether the removal of the property on January 11, 2000 was proper. In the Replevin Action, Plaintiffs averred that "[o]n or about January 11, 2000, the Defendant, West Penn Township Volunteer Fire Company No. 1, Inc. acting through its agents and representatives, and without the permission of either the Andreas Fire Company and/or the Relief Association, improperly confiscated an emergency rescue truck, as well as emergency fire and rescue equipment owned by the Plaintiffs." (Replevin Com-

---

**12.** Plaintiff Paul Breiner, of course, did not have an interest protected by either Amendment with respect to the removal of the property. He has, however, asserted a vague "right of association" claim. Such a claim does not appear to be implicated with respect to the removal of the property and, in light of the absence of state action in connection with the taking of the property, Plaintiff Paul Breiner does not have a viable First Amendment claim based upon that particular incident.

plaint, ¶ 4.) In this case, Plaintiffs aver that "on January 11, 2000, West Penn No. 1, along with its agents and officers, as well as with the 'complicity' and assistance of the Township Police," unlawfully removed the fire truck and other equipment. (Amended Complaint, ¶¶ 29–32.)

The fact that Plaintiffs failed to seek damages in the Replevin Action does not defeat application of claim preclusion here. Plaintiffs plainly had the right to seek damages for the wrongful detention of the property in question. *See* Pa.R.Civ.P. 1085(b); *Hembach, supra,* 1998 WL 54737, *6 n. 10. Nor does the fact that the Replevin Action was instituted after this civil rights action was filed preclude application of res judicata. The critical factor is that a final judgment has been reached in the Replevin Action. *See Thompson v. Fitzgerald,* 329 Pa. 497, 198 A. 58, 62–63 (1938)("If a judgment is rendered in the second action before the first is tried, it will support a plea of res judicata in the first suit . . . .").

In *Durhan v. Neopolitan,* 875 F.2d 91 (7th Cir.1989), the court applied res judicata principles in a context similar to that presented here. Two vehicles owned by the plaintiff in *Durhan* were seized in connection with an investigation into ownership of the vehicles. Plaintiff brought a replevin action, and ultimately recovered possession of the vehicle. Plaintiff then filed a civil rights action, contending that he had been deprived of property without due process of law. The officers involved in the seizures, as well as the Mayor of Chicago and the Sheriff of Cook County, were named as defendants in the civil rights action.[13] The court held that the civil rights action was barred, finding that both the replevin and the civil rights actions required a determination as to ownership of the vehicles:

"in both the replevin and Section 1983 actions, the 'lawfulness' of defendants' conduct must be adjudicated to determine whether plaintiff was unlawfully deprived of his property interests." *Id.* at 95. The court further explained that both the replevin and the civil rights claim arose out of the same transaction, and plaintiff could have joined both the replevin and § 1983 theories of recovery in the same action. *Id.* In language particularly apropos here, the court stated:

> [F]or purposes of claim preclusion, the replevin and civil rights actions are only two theories of one cause of action rather than two causes of action. Both recovery theories examine the legality of the defendants' conduct. If plaintiff parked in contravention of local law, if the seizure statute for illegally parked cars is not constitutionally infirm and if defendants complied with the statutory procedure, their actions in seizing and retaining the vehicles were lawful, so that plaintiff was not entitled to either return of the cars under the replevin statute or injunctive, compensatory or punitive damages for violation of due process. Both inquiries there are merely different theories for finding defendants' conduct unlawful. . . . *"[A] party may not maintain two suits based on the same set of facts by the simple expediency of limiting theories of recovery advanced in the first."*

*Id.* at 96 (emphasis added).

In this case, the legality of the removal of the fire truck and related equipment were central to the Replevin Action. It will be recalled that Andreas No. 1 and the Andreas Relief Association, on the one hand, and West Penn No. 1, on the other, had stipulated on January 21, 2000 that West Penn No. 1 could retain possession of

---

**13.** The officers were not named as defendants    in the replevin suit.

the vehicle and other firefighting equipment until further order of the court. Thus, after January 21, 2000, West Penn No. 1's possession of the property was permissive. Replevin is a cause of action to secure possession of property and to recover damages for its detention by the illegal act of the Defendant. *Internat'l Electronics Co. v. N.S.T. Metal Products Co.*, 370 Pa. 213, 217, 88 A.2d 40, 42 (1952). Thus, the penultimate question before the Schuylkill County Court pertained to the lawfulness of the original transfer of possession on January 11, 2000. In this civil rights action, the legality of the original transfer of possession is also central to the alleged violation of constitutional rights. Both cases involve the same facts. Under these circumstances, interests of judicial economy and finality in litigation advanced by the doctrine of res judicata are served by barring Plaintiffs' civil rights claim concerning the removal of the fire truck and related equipment.

■ Even if "claim preclusion" does not apply, Plaintiffs' litigation of a § 1983 claim concerning the removal of the fire truck and related equipment is plainly barred by the more limited doctrine of collateral estoppel, or "issue preclusion." "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in section 1983 cases, apply the same preclusion rules as would the courts of that state." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir.1993). Under Pennsylvania law, the doctrine of collateral estoppel applies where the following four elements are present: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with the party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Jones v. United Parcel Service*, 214 F.3d 402, 405 (3d Cir.2000).

■ West Penn No. 1 took possession of the property in question by virtue of authority granted to it by the Andreas Relief Association at its regular quarterly meeting on January 11, 2000. Central to Plaintiffs' constitutional claims concerning the removal of the truck and equipment is the validity of the action taken by the Andreas Relief Association. Judge Domalakes was confronted with this same issue in the Replevin Action, and ruled against the Plaintiffs on this point. He further concluded that the Andreas Relief Association "had the authority to transfer possession and use of said items to [West Penn No. 1]...." (March 28, 2001 Opinion of Judge Domalakes at 10.) Moreover, he determined that West Penn No. 1 had the right to use the fire truck and related equipment until the point in time when the Andreas Relief Association requested return of the property. (*Id.*)

These findings are completely inconsistent with Plaintiffs' assertion that the removal of the property violated their constitutional rights. Plaintiffs insist that Judge Domalakes' ruling is not entitled to preclusive effect because the Commonwealth Court remanded the case to Judge Domalakes for further proceedings. But the Commonwealth Court remanded only with respect to the determination that the Andreas Relief Association had the right to the return of *all* the property. (Commonwealth Court Opinion of October 19, 2001 at 7.) Plaintiffs apparently did not press on appeal the validity of the transfer of possession of the property to West Penn No. 1. Thus, there was no cause for the Com-

monwealth Court to disturb Judge Domalakes' ruling that the transfer of possession to and use of the property by West Penn No. 1 was valid.

Plaintiffs imply that Judge Domalakes could not have found that the transfer of the fire truck was valid because the truck was titled in the name of Andreas No. 1, and not the Andreas Relief Association. It does not appear, however, that Plaintiffs presented that issue in the state courts. That fact, moreover, is not pertinent to the application of the doctrine of collateral estoppel here. Plaintiffs contested the validity of the transfer of all equipment by challenging the action taken by the Andreas Relief Association. That question having been resolved adverse to Plaintiffs, they cannot now present a new theory for determination of the same matter.[14]

In summary, Plaintiffs have not produced sufficient evidence of state action in connection with the removal of the truck and equipment to sustain a § 1983 action related thereto. In any event, such a claim is barred by either the doctrine of res judicata or collateral estoppel. Accordingly, Defendants are entitled to summary judgment on this aspect of Count I of the Amended Complaint.

### 2. *The Remaining Constitutional Claim in Count I*

Count I of the Amended Complaint also contains a claim that "[t]he defendants have unlawfully diverted public funds earmarked, identified, and appropriated for Andreas No. 1, and converted them illegally to the use of West Penn Fire Company No. 1." (Amended Complaint, ¶ 46.) Plaintiffs claim that "[t]his was done by the

defendant Litwhiler and the defendant Township acting [in] furtherance of an unlawful conspiracy with the individual defendants." (*Id.*) In addition, Plaintiffs appear to be claiming that Defendants have improperly interfered with the affairs of Andreas No. 1 and the Andreas Relief Association. (Amended Complaint, ¶ 43.)

Defendants have moved for summary judgment on this aspect of Count I by again invoking the doctrine of collateral estoppel. Defendants point out that Andreas No. 1 and the Andreas Relief Association pursued to a final judgment the Declaratory Judgment Action involving claims materially indistinguishable from those now included in Count I of the Amended Complaint. For example, the state court Amended Declaratory Complaint alleged that West Penn Township "has no authority to control the internal operating affairs of the Andreas Fire Company." (Amended Complaint for Declaratory Judgment in *Leiby, et al., v. West Penn Township, et al.*, No. S–120–2000 (Schuylkill County), ¶ 28.) In their Amended Complaint filed in this action, Plaintiffs allege that "[t]he Township, its supervisors, its solicitor, and the defendant Litwhiler have no lawful authority to become involved in, control, or supervise the internal operations of Andreas No. 1 or any fire company or relief association." (Amended Complaint, ¶ 23.) The Amended Complaint for declaratory relief alleged that funds allocated by the Commonwealth of Pennsylvania pursuant to the Volunteer Firefighters Relief Association Act, 53 P.S. § 8501, that had been "specifically earmarked for the Relief Association and its member, the Andreas Fire Company, was

---

**14.** It should be noted that in the complaint filed in the Replevin Action, the Andreas Relief Association asserted an interest in the rescue truck, attaching to the complaint a bill of sale indicating that the truck had been sold to the Relief Association. Thus, it is not clear that Andreas Relief Association lacked a sufficient interest in the rescue truck to transfer its possession to West Penn No. 1.

improperly diverted to West Penn No. 1." (Amended Complaint for Declaratory Judgment at ¶¶ 22–24.) As noted above, the Amended Complaint filed in this action similarly avers that the Defendants unlawfully diverted public funds that had been earmarked for Andreas No. 1. (Amended Complaint, ¶ 46.)

It is thus clear that identical issues were presented in both the state court proceedings and this action. It is also indisputable that Plaintiffs were afforded a full and fair opportunity to litigate these issues in the Schuylkill County Court. Judge Domalakes addressed these issues both in a written opinion on preliminary objections and in an opinion denying a motion for reconsideration.

Finally, Judge Domalakes' opinion resolved questions pertaining to the authority of West Penn Township to regulate the affairs of volunteer firefighting companies and to allocate state-provided funding for firefighting purposes. In particular, Judge Domalakes found that Ordinance No. 4 of 2000 was well within the Township's legislatively-defined authority. Ordinance No. 4 confirmed the appropriation of monies to West Penn No. 1. It also established rules governing fire protection procedures and fire company administration. Thus, to the extent that Plaintiffs may have had a viable constitutional claim concerning the actions of West Penn Township with respect to firefighting procedures, administration of volunteer fire companies, and allocation of state funds, Judge Domalakes' ruling precludes litigation of those claims here.[15]

## C. Count II: Claim Brought by Angela Serfass against Tierney and the Township for Violations of § 1983 and the First Amendment

In Count II of the Amended Complaint, Angela Serfass asserts a cause of action against Defendants Tierney and the Township, claiming that "[t]he defendants ... deprived plaintiff of her right to serve as 'Captain' of Fire Police for no other reason that she was a friend and supporter of Paul Breiner and Andreas No. 1 and because she defeated Tierney's friend Ernest Boerner in an honest election where she was properly selected by her peers." (Dkt. Entry 9, ¶ 51.) Serfass alleges that such conduct violated her First Amendment rights.

In considering a § 1983 claim for retaliation against a plaintiff for exercising First Amendment rights, the court is to apply a three step analysis: (1) was the plaintiff engaged in a First Amendment-protected activity; (2) was the protected activity a substantial factor in the adverse action taken against the plaintiff; and (3) would the adverse action have occurred in the absence of the protected activity. *See Green v. Philadelphia Housing Auth.*, 105 F.3d 882, 885 (3d Cir.), *cert. denied*, 522 U.S. 816, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997); *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir.1996); *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir.1995); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). A plaintiff need not show that the retaliatory conduct itself abridged a constitutionally-protected right. Instead, it is sufficient that

---

15. Plaintiffs do not present any authority supporting a claim of a protected property interest in funds allocated by the Commonwealth to West Penn Township for firefighting purposes. Nor have Plaintiffs countered the factual showing made by Defendant Litwhiler that funds received during fiscal year 1999 were properly not allocated to Andreas No. 1 because of its failure to account for use of state-provided funds in earlier years. (*See* Brief in Support of the Township Employees' S.J. Mot. at 16–17.) Thus, Plaintiffs' claim with respect to the alleged improper diversion of funds is, in any event, without merit.

the adverse action was such as to deter a person of ordinary firmness from engaging in the First Amendment-protected activity. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001).

■ With respect to Serfass' First Amendment claim regarding her inability to serve as Fire Police Captain, Defendant Tierney concedes that "[t]his issue was not raised in the prior state court actions and thus, would not be collaterally estopped." (Dkt. Entry 46, p. 7.) Tierney asserts, however, that Serfass was denied the position as Fire Police Captain solely because "West Penn Township required that all persons seeking the position of fire police captain be at least 21 years old." (*Id.*)

It is undisputed that Serfass was under 21 years of age at the time of her election as Fire Police Captain. Serfass was born on October 4, 1978. (Serfass Dep., Dkt. Entry 48, Ex. 23 at p. 9.) She was elected as Fire Police Captain in December of 1998, at which time she was only 20 years old. (*Id.* at p. 10.) Serfass was aware that she was the only person, male or female, under the age of 21 ever to be elected to that position. (*Id.* at p. 33.) In fact, as Tierney points out, Serfass testified that the only reason stated by the Township Supervisors as to why she was denied the position was that she was "too young." (*Id.* at p. 40.)

Plaintiffs' brief in opposition (Dkt. Entry 64) offers no evidence in support of Serfass' First Amendment claim. In fact, the Plaintiffs' argument in this regard is tailored to the purported Fourteenth Amendment violation, which was not raised until the untimely Second Amended Complaint was filed. Indeed, the Plaintiffs concede

that the reason she was not allowed to assume the position of Fire Police Captain was her age.

In response to Defendants' arguments, Plaintiffs contend that the issue is not whether Ms. Serfass was denied the position of Fire Police Captain, but that she was not allowed to serve as a fire police person at all. The record on this point is far from clear. On the one hand, Ms. Serfass testified that she has been a member of Andreas No. 1 and a fire police person since 1996. (Serfass Dep. at 9–11.) She later testified that she was removed as a fire police person, while males under age 21 were allowed to serve in that position. (*Id.* at 63.) [16] She also testified that she effectively served as Fire Police Captain when she was 20 years old. (*Id.* at 61–62.)

What is clear, however, is that after she turned 21 years old, she was approved as Fire Police Captain. What is also clear is that the Amended Complaint is premised exclusively on the denial of position of Fire Police Captain. Plaintiffs have offered no evidence that individuals who were under the age of 21 were ever able to serve in the capacity as Fire Police Captain. Nor do they offer evidence that this requirement was unreasonably applied to Serfass. Furthermore, there is absolutely no evidence that she was denied the position because of her affiliation with Andreas No. 1 or the Andreas Relief Association. A viable First Amendment claim pertaining to the denial of position of Volunteer Fire Police Captain or service as a fire police person is simply not present. Accordingly, Defendants are entitled to summary judgement on Count II of the Amended Complaint.

---

**16.** Plaintiffs have not identified any male who was allowed to serve in this capacity while under age 21.

**D. Count VI: Claim Brought by Paul Breiner and Byron Hess Against Leroy Breiner, the Township and West Penn No. 1 for Retaliation**

Mr. Breiner and Mr. Hess contend that they were disciplined and suspended from firefighting service in retaliation for the filing of this lawsuit. The record reflects that Paul Breiner and Byron Hess were suspended from firefighting services as a result of their refusal to obey an order of the Township Fire Chief to stand by at the Andreas No. 1 station while West Penn No. 1 responded to a fire occurring in nearby Coaldale. The incident occurred on April 8, 2000, and Plaintiffs were notified of the contemplated disciplinary action by letters dated April 10, 2000. The discipline was imposed by letter dated April 26, 2000, based upon evidence presented at a hearing held on April 25, 2000, that Breiner and Hess did not attend. The record further reflects that Breiner and Hess were suspended for an additional 30 days for responding to fires while under suspension. This discipline was imposed on June 27, 2000.

Breiner and Hess appealed the disciplinary actions to the Court of Common Pleas of Schuylkill County. (In re: Appeal of Paul Breiner and Byron Hess, No. S–1500–2000.) The appeal was taken pursuant to the Local Agency Law, 2 Pa.C.S.A. §§ 751, *et seq.* Notably, a state court may consider claims of violations of constitutional rights in appeals taken from local agency actions. *See* 2 Pa.C.S.A. § 754; *McDaniels v. Flick,* 59 F.3d 446, 461 (3d Cir.1995). Breiner and Hess raised constitutional challenges in the state court, contending that the April 26, 2000 suspension violated their rights to due process, and that the June 27, 2000 suspension was arbitrary, capricious, discriminatory and

an abuse of discretion. (*See* October 3, 2001 Opinion of Judge Domalakes at 5–6.)

Judge Domalakes rejected these contentions. As to the April, 2000 incident, he found that there was a substantial basis for concluding that Breiner and Hess had violated an order to stand by from Fire Chief Leroy Breiner. (*Id.* at 13.) As to the substantive due process claim, Judge Domalakes found that the discipline imposed in June of 2000 was appropriate because Breiner and Hess had "clearly violated the terms of their initial suspensions...." (*Id.* at 18.)

Defendants argue that the state court adjudication on the disciplinary sanctions is entitled to preclusive effect. In *Gregory v. Chehi,* 843 F.2d 111 (3d Cir.1988), our Court of Appeals held that claim preclusion principles attach to state court review of local agency personnel actions under the Local Agency Law. Thus, pursuant to *Gregory,* the retaliation claim asserted against West Penn Township is plainly barred. *See Bracy v. Com. of Pa., Dept. of Public Welfare,* Civ.A. No. 85–5927, 1989 WL 11231 (E.D.Pa. Feb. 10, 1989).

*Gregory* held that claim preclusion may not bar sequel suits against parties in their individual capacities. *Id.* at 120. Instead, whether the suit may be maintained against those who were not parties in their individual capacities in the state court proceedings must be determined under issue preclusion principles. *Id.* at 121.

■ In this case, Judge Domalakes did not address a claim that the disciplinary action was motivated by an intention to punish Breiner and Hess for filing this litigation. Nor does it appear that such a determination would be inextricably intertwined with his affirmance of the disciplinary action. Thus, adjudication of the retaliation claims is not foreclosed by collateral

estoppel principles.[17]

Plaintiffs, in any event, have not presented sufficient evidence to warrant a trial on the retaliation claims. First, as to West Penn No. 1, Plaintiffs have presented no evidence that this entity was involved in the disciplinary actions. The fact that Leroy Breiner was involved in the disciplinary actions is not enough to impose liability on West Penn No. 1. The record is clear that Leroy Breiner was involved in his capacity as Township Fire Chief, and not as West Penn No. 1's Chief.

As to Leroy Breiner, no evidence has been presented that he participated in the disciplinary proceedings in order to retaliate against Paul Breiner or Mr. Hess. Furthermore, there were clearly good grounds for the disciplinary action. Plaintiffs conclusorily assert that they were singled out for the disciplinary action, but they do not identify any other person who disobeyed an order of the Fire Chief or violated the terms of an order of suspension and were not disciplined. Plaintiffs' bald assertions are not sufficient to avoid summary judgment. *See Weston v. Pennsylvania*, 251 F.3d 420, 432–33 (3d Cir. 2001). In the absence of evidence that the filing of the suit was the cause of the disciplinary action, Defendants are entitled to summary judgment on this retaliation claim. *See Wicks v. Shields*, 181 F.Supp.2d 423, 426 (E.D.Pa.2002).

### E. State Law Claims

In light of the dismissal of Plaintiffs' § 1983 claims, it is appropriate to consider whether supplemental jurisdiction over their remaining state law claims should be declined. *See* 28 U.S.C. § 1367(c)(3). After dismissal of all federal claims, a district court may decline to exercise supplemental jurisdiction over the remaining state law claims if it finds that the parties will not be prejudiced and that the interests of judicial economy would be served. *See Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir.1996). "This decision is committed to the sound discretion of the district court." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 444 (3d Cir.1997), *cert. denied*, 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998).

In this case, there does not appear to be any prejudice to the Plaintiffs if the state law claims are not retained in this Court. Pennsylvania has enacted a "savings statute." *See* 42 Pa. Cons.Stat. Ann. § 5103. Under this statute, plaintiffs are permitted to file a certified transcript of these proceedings in state court and "the date of institution of the federal suit [serves] as the state court filing date for statute of

---

**17.** The state court adjudication, however, may be entitled to preclusive effect for a reason not advanced by the parties. In *Villela v. City of Philadelphia*, No. Civ.A. 95–1313, 2000 WL 1972 (E.D.Pa. Dec. 30, 1999), *aff'd mem.*, 261 F.3d 495 (3d Cir.2001), the court held that a First Amendment retaliation claim could not be maintained in federal court following the state court's affirmance of disciplinary action under the Local Agency Law. In dismissing the § 1983 retaliation claim, the court relied upon the "Rooker–Feldman" doctrine. As the court explained, "[a] federal proceeding is barred under Rooker–Feldman where considering the federal court cause of action would be the equivalent of an appellate review of the state court's decision. Rooker–Feldman applies to both claims that were brought and claims that *could have been* brought in state court." *Id.* at *3 (emphasis in original). Finding that the retaliation claim could have been presented in the appeal taken under the Local Agency Law, the court held that adjudication of plaintiff's retaliation-based challenge to the adverse personnel action would effectively implicate the validity of the state court adjudication, and was therefore barred under Rooker–Feldman. This rationale applies with equal force here. Thus, the Rooker–Feldman doctrine provides an independent basis for dismissing Count VI of the Amended Complaint.

limitations purposes, thereby obviating any limitations problems caused by dismissal." *Rashid v. Kite,* 957 F.Supp. 70, 75 (E.D.Pa.1997); *see also Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir.1982); *Bezpalko v. Gilfillan, Gilpin & Brehman,* No. 97–4923, 1998 WL 321268, at *7 (E.D.Pa. June 17, 1998) ("In addition, because Pennsylvania law provides that matters dismissed by a federal court for lack of subject matter jurisdiction may be refiled in the appropriate state court without regard to the limitations period, plaintiffs will not be prejudiced with respect to the applicable limitations period if they choose to refile their lawsuit."); *Long v. National Football League,* 870 F.Supp. 101, 106 (W.D.Pa.1994) ("However, Pennsylvania law provides a plaintiff may effect a transfer of an action that has been dismissed by a federal court for lack of jurisdiction. The statute of limitations for state law claims is tolled if a timely action has been filed in a federal court and dismissed."), *aff'd mem.,* 66 F.3d 311 (3d Cir.1995). It is also significant that only the individual Defendants are named in the state law claims, those claims concern events that occurred in Schuylkill County, the court there has better familiarity with this contentious dispute (having issued a number of opinions in the various matters brought before it), and pursuit of the state law claims in that county would be more convenient for all concerned. Therefore, I will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and those claims will be dismissed without prejudice.

## III. *CONCLUSION*

For the reasons set forth above, the Second Amended Complaint will be stricken. Defendants are granted summary judgment on Counts I, II, and VI of the Amended Complaint. The remaining claims will be dismissed, without prejudice.